O

# United States District Court
# Central District of California

| | |
|---|---|
| PAIGE, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SAGE AND PAIGE COLLECTIVE PTY LTD et al.,<br><br>　　　　　　Defendants. | Case № 2:22-cv-03511-ODW (SSCx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [49]** |

## I.   INTRODUCTION

Plaintiff Paige, LLC ("Paige") moves for entry of default judgment against Defendant Sage and Paige Collective PTY LTD ("Saige and Paige") on Paige's Complaint for trademark infringement and dilution. (Mot. Default J. ("Motion" or "Mot."), ECF No. 49.)  For the reasons that follow, the Court **GRANTS** Paige's Motion.

## II.   BACKGROUND

Paige designs, markets, and distributes high-end apparel, footwear, and accessories. (Compl. ¶ 8, ECF No. 1.)  It sells its merchandise throughout the United States and the world at high-end retailers. (*Id.* ¶ 12.)  Paige owns eleven United States and two Australian registered trademarks for PAIGE® concerning these items and associated retail store services (the "PAIGE Mark"). (*Id.* ¶¶ 9–10.)  Paige has used the

PAIGE Mark for more than two decades, investing more than $100 million since the brand's launch to advertise and promote the brand and Mark. (*Id.* ¶ 11.) The PAIGE Mark is uniquely and exclusively associated with Paige. (*Id.* ¶ 13.)

Sage and Paige adopted and is using the trademark SAGE + PAIGE in both word mark form and stylized logo forms ("SAGE + PAIGE Mark"). (*Id.* ¶¶ 15–16.) Sage and Paige uses the mark in retail sales of goods and services identical to those of Paige— denim, accessories, handbags, and retail store services featuring these items. (*Id.* ¶¶ 8– 10, 15–17.) It sells its products internationally, including in the United States, through its website and social media platforms. (*Id.* ¶¶ 14, 16.)

When Sage and Paige adopted the SAGE + Paige Mark, it was aware of the PAIGE Mark, either because of the PAIGE Mark's notoriety or because Paige had specifically informed Sage and Paige of Paige's United States rights during an ongoing trademark dispute between the companies in Australia. (*Id.* ¶¶ 17–18.) In March 2022 and April 2022, Paige sent cease-and-desist letters to Sage and Paige, demanding it cease infringing Paige's rights in the PAIGE Mark. (*Id.* ¶¶ 19–20.) As of May 2022, Sage and Paige continued to infringe the PAIGE Mark. (*Id.* ¶¶ 20–21.)

Thus, on May 23, 2022, Paige filed this trademark infringement and dilution action against Sage and Paige. (Compl.) Paige asserts six causes of action: (1) federal trademark infringement, (15 U.S.C. § 1114); (2) federal false designation of origin, (15 U.S.C. § 1125(a)); (3) federal trademark dilution (15 U.S.C. § 1125(c)); (4) state trademark dilution and injury to reputation (Cal. Bus. & Prof. Code § 14330); (5) unfair business practices (Cal. Bus. & Prof. Code § 17200); and (6) common law trademark infringement. (*Id.* ¶¶ 25–69.)

Paige caused the summons and complaint to be served on Sage and Paige pursuant to Article 5 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention"). (Decl. Jessica Bromall Sparkman ISO Mot. ("Sparkman Decl.") ¶ 3, ECF No. 49-1.) On April 19, 2023, service was completed by the Australia Central Authority ("ACA")

pursuant to the Hague Convention. (*Id.*) Prior to ACA service, in June 2022, Paige sent copies of the summons and complaint to Sage and Paige via registered post in Australia to its registered address, its principal place of business address, and its contact address on file with the Australian government. (Decl. Alexis Keating ISO Serv. ¶¶ 7–8, 11, ECF No. 14.) Also in early 2022, Paige sent the summons and complaint to Sage and Paige via email and provided copies to Sage and Paige's Australian counsel. (*Id.* ¶ 12; Sparkman Decl. ¶ 10.)

Although formal service was completed on April 19, 2023, Sage and Paige has not appeared nor filed any answer or response to the Complaint. (Sparkman Decl. ¶¶ 3–4.) Accordingly, on November 13, 2024, at Paige's request, the Clerk entered Sage and Paige's default. (Default, ECF No. 47.) On December 16, 2024, Paige filed the present motion for default judgment. (Mot.) To date, the Court has received no response from Sage and Paige to either the Complaint or the Motion.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rule 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court need not make

detailed findings of fact in the event of default, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

## IV. DISCUSSION[1]

Paige satisfies the procedural requirements for default judgment and establishes that entry of default judgment against Sage and Paige is substantively appropriate. However, although Paige demonstrates that injunctive relief is warranted, it fails to fully support its request for attorneys' fees and costs.

### A. PROCEDURAL REQUIREMENTS

Local Rule 55-1 requires the movant to establish: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

Plaintiff satisfies these requirements. On November 13, 2024, the Clerk entered default against Sage and Paige as to Paige's Complaint. (*See* Default.) Paige's counsel submits declaration testimony that Sage and Paige is not a minor or incompetent person and the Servicemembers Civil Relief Act does not apply. (Sparkman Decl. ¶ 6.) Lastly, Sage and Paige has not appeared in this case, so written notice of the Motion is not required. Thus, Plaintiff satisfies the procedural requirements for default judgment.

### B. *EITEL* FACTORS

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money

---

[1] The Court is satisfied that it has subject matter jurisdiction over Paige's federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and supplemental jurisdiction over Paige's state law claims pursuant to 28 U.S.C. § 1367. Additionally, the Court is satisfied that it has personal jurisdiction over Sage and Paige, as Sage and Paige sells, offers for sale, ships, delivers, and advertises its infringing products in this judicial district. (Compl. ¶ 6; Sparkman Decl. ¶¶ 14, 17.)

at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). Accordingly, the Court considers these two factors first.

### 1. Second & Third Eitel Factors

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are taken as true, "claims which are legally insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Paige raises six claims, for federal trademark infringement, false designation of origin, federal trademark dilution, state trademark dilution, state unfair business practices, and common law trademark infringement. (Compl. ¶¶ 25–69.) Paige groups these claims into trademark infringement claims, (Claims 1, 2, 5, and 6), and trademark dilution claims, (Claims 3 and 4). (Mot. 18–25.)

#### a. Trademark Infringement

Paige's trademark infringement claims are all subject to the same legal standards. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (noting that claims of trademark infringement, false designation of origin, and unfair competition were all "subject to the same test"). To state a claim for trademark infringement, a plaintiff must show that (1) it has a valid, protectable mark, and (2) the defendant's use of the mark is likely to cause consumer confusion. *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Registering a mark with "the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services

specified in the registration." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

As to ownership of a valid, protectable mark, Paige alleges that it owns the PAIGE Mark, has numerous registrations, and has continually used the marks since 2004. (Compl. ¶¶ 8–12.) Thus, Paige satisfies the first element.

Regarding the second element, courts employ the eight *Sleekcraft* factors when evaluating the likelihood of confusion. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). These factors are: (1) strength of the mark; (2) relatedness of goods; (3) similarity of marks; (4) actual confusion; (5) marketing channels; "(6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *Sleekcraft*, 599 F.2d at 348–49, *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). These factors are to be applied flexibly and are not intended as a checklist. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). "Neither actual confusion nor intent is necessary to a finding of *likelihood* of confusion." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988)

Paige alleges that the PAIGE Mark is strong and inherently distinctive; Sage and Paige markets the same type of goods and retail store services as Paige; Sage and Paige incorporates the identical word mark as the PAIGE Mark into its own SAGE + PAIGE Mark; Sage and Paige sells its goods at inexpensive prices, making it unlikely that purchasers will exercise a high degree of care; and Sage and Paige willfully continues to infringe the PAIGE Mark despite Paige's cease and desist letters. (Compl. ¶¶ 8–23.) Accepting Paige's allegations as true, *TeleVideo Sys.*, 826 F.2d at 917–18, Paige sufficiently states claims on which it may recover for trademark infringement, false designation of origin, and unfair competition.

    b.  Trademark Dilution

Paige's federal dilution claim is subject to the same legal analysis as its state dilution claim. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). To establish dilution, a plaintiff must show that (1) its mark is "famous and distinctive," (2) the defendant is using the mark in commerce; (3) the defendant began using the mark after it became famous; and (4) the defendant's use is likely to cause dilution by blurring or tarnishment. *Jada Toys*, 518 F.3d at 634.

Paige alleges that the PAIGE Mark is famous and distinctive; Sage and Paige uses the SAGE + PAIGE Mark in commerce; Sage and Paige's use began well after the PAIGE Mark became famous; and Sage and Paige's use of the SAGE + PAIGE Mark is causing or is likely to cause dilution by blurring or tarnishment. (Compl. ¶¶ 8–13, 15–17, 48–49, 55–56.) Accepting Paige's allegations as true, *TeleVideo Sys.*, 826 F.2d at 917–18, Paige sufficiently states claims on which it may recover for federal and state trademark dilution.

As Paige states claims for trademark infringement and dilution on which it may recover, the second and third *Eitel* factors weigh in favor of entering default judgment against Sage and Paige on Paige's claims.

  *2.*  *Remaining Eitel Factors*

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against Sage and Paige. To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment. Paige would suffer prejudice absent entry of default judgment because it would have no recourse against Sage and Paige's continuing infringement, and no remedy for the injuries sustained from Sage and Paige's misconduct. (Mot. 17.) Further, as discussed below, Paige requests only injunctive relief and no monetary damages, so the sum of money at stake is limited to Paige's attorneys' fees and costs. (*Id.* at 25.)

The fifth and sixth factors—possibility of dispute and excusable neglect—also weigh in favor of default judgment. Paige's allegations are accepted as true on default,

and Sage and Paige may not now "challenge the accuracy of the allegations in the complaint." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Paige has supported its claims with ample evidence and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment." *Id.* Furthermore, nothing in the record suggests that Sage and Paige's failure to appear is a result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor. However, because Sage and Paige's failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against Sage and Paige on Paige's claims for (1) federal trademark infringement, (15 U.S.C. § 1114); (2) federal false designation of origin, (15 U.S.C. § 1125(a)); (3) federal trademark dilution (15 U.S.C. § 1125(c)); (4) state trademark dilution and injury to reputation (Cal. Bus. & Prof. Code § 14330); (5) unfair business practices (Cal. Bus. & Prof. Code § 17200); and (6) common law trademark infringement.

C. **REQUESTED RELIEF**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Paige seeks a permanent injunction and attorneys' fees and costs. (Mot. 27–34.) The relief Paige seeks is consistent with the relief requested in the Complaint. (Compl., Prayer (requesting a preliminary and permanent injunction, general and specific damages, statutory damages, and attorneys' fees and costs, among other relief).) Although the Court finds the injunction warranted, and that Paige is entitled to recover fees and costs, the Court awards less attorneys' fees and costs than Paige requests.

### 1. Permanent Injunction

Paige requests that the Court permanently enjoin Sage and Paige's ongoing infringement. (Mot. 27–28; Compl., Prayer ¶ A.)

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting 15 U.S.C. § 1116(a)). A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury, (2) for which a legal remedy is inadequate to compensate, (3) that the balance of hardships between the plaintiff and defendant supports an equitable remedy, and (4) the "public interest would not be disserved by a permanent injunction." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." *eBay*, 547 U.S. at 391.

Paige has alleged facts sufficient to support an injunction. First, Paige demonstrates irreparable injury from Sage and Paige's continuing infringement because it has established a likelihood of success on the merits of its infringement claims. 15 U.S.C. § 1116(a); *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-cv-04272-EJD, 2021 WL 4962661, at *7 (N.D. Cal. July 23, 2021) (discussing that, under the "recently enacted Trademark Modernization Act of 2020," "a plaintiff seeking an injunction against trademark infringement" is "entitled to a rebuttable presumption of irreparable harm" upon establishing "a likelihood of success on the merits"). Second, a legal remedy is inadequate because "there is no adequate remedy at law for the injury caused by [Sage and Paige's] continuing infringement." *Century 21*, 846 F.2d at 1180.

Third, the balance of hardships weighs in favor of Paige because "there is no hardship to [Sage and Paige] when a permanent injunction would merely require [it] to comply with the law." *Teddy's Red Tacos Corp. v. Theodoro Vazquez Solis*, No. 2:19-cv-03432-RSWL (ASx), 2021 WL 4517723, at *11 (C.D. Cal. Aug. 16, 2021)

(alteration omitted). Fourth, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009); *see also Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178 (C.D. Cal. 2017) (finding public interest factors weighed in favor of injunction because there were "serious questions" as to whether consumers were likely to be "confused between the products").

The Court thus finds it appropriate to permanently enjoin Sage and Paige from using Paige's PAIGE Mark, or any other mark intended to infringe or dilute the distinctiveness of the PAIGE Mark, as specified below.

    *2.    Attorneys' Fees & Costs*

Paige also seeks its costs and attorneys' fees for prosecuting Sage and Paige's trademark infringement and dilution. (Mot. 28–34; Compl., Prayer ¶ N.)

As to costs, a plaintiff that establishes a defendant's trademark infringement is entitled to recover the costs of the action. 15 U.S.C. § 1117(a). Paige establishes its trademark infringement claim and is thus entitled to recover its costs; however, in the Motion, Paige identifies inconsistent costs figures. (*Compare* Notice Mot. 2, ECF No. 49 ($4,299.70), *with* Mot. 33 ($4,440.35).) Paige submits declaration testimony and exhibits reflecting litigation expenses totaling $4,019.70. (Sparkman Decl. ¶¶ 37–39, Exs. Z–BB, ECF Nos. 27–29.) As these costs are recoverable under the statute and supported by evidence, the Court **AWARDS** Paige **$4,019.70** in litigation costs. To the extent Paige seeks costs in excess of this figure, the Court **DENIES** the request as unsupported.

Turning to attorneys' fees, "the Lanham Act allows an award of attorneys' fees in 'exceptional cases.'" *Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020) (quoting 15 U.S.C. § 1117(a)). Such an award of reasonable attorneys' fees is permitted in the court's discretion; it is not mandated. *Id.*

### a. Exceptional case

Whether a case is "exceptional" is determined in light of the totality of circumstances, considering several nonexclusive factors and using a preponderance of the evidence standard. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (discussing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), and the "identical" "exceptional" standard in the Patent Act). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* at 1180. "Exceptional cases" include those in which a defendant's conduct is "fraudulent, deliberate, or willful." *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1039 (9th Cir. 2007); *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993).

Paige alleges this case is exceptional because Sage and Paige's infringing conduct is deliberate, malicious, intended to confuse the public, and undertaken in conscious disregard of Paige's rights. (Compl. ¶¶ 17–22, 34, 41, 44, 52, 69.) Sage and Paige was aware of the PAIGE Mark when it adopted the SAGE + PAIGE Mark, first, because of the PAIGE Mark's notoriety and, second, because Paige informed Sage and Paige that its use of the SAGE + PAIGE Mark infringed Paige's rights. (*Id.* ¶¶ 17–21.) As such, Sage and Paige's continued infringement was deliberate and in conscious disregard of Paige's rights. (*Id.*) Accepting these allegations as true, this case is exceptional such that Paige is entitled to recover its attorneys' fees per the Lanham Act. *See* 15 U.S.C. § 1117(a).

### b. Reasonable fee award

A request for attorneys' fees upon default judgment is generally limited to the fee schedule provided in Local Rule 55-3. However, Paige asks the Court to award its reasonable fees in excess of that schedule. (Notice Mot. 2); C.D. Cal. L.R. 55-3 ("An attorney claiming a fee in excess of this schedule may . . . request . . . to have the attorney's fee fixed by the Court."). To determine a reasonable attorney fee award, the

1  Court "must first determine the presumptive lodestar figure by multiplying the number
2  of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel*
3  *Corp.*, 6 F.3d at 622 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Next, in
4  appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar
5  figure" based on a number of factors.[2] *Id.* As the lodestar figure is presumptively
6  reasonable, it should be adjusted only in "rare" cases. *Edmo v. Corizon, Inc.*, 97 F.4th
7  1165, 1168 (9th Cir. 2024) (collecting cases). The burden is on the moving party to
8  produce evidence that the billing rates and hours are reasonable. *Intel Corp.*, 6 F.3d
9  at 622–23.

10  Paige requests $82,459.50[3] in attorneys' fees, which comprises $80,057.50 for its
11  primary counsel, JMBM, and $2,402.00 for its Australia counsel. (Notice Mot. 2;
12  Sparkman Decl. ¶ 36.) First, as for Australia counsel's fees, Paige submits only a one-
13  page invoice for the work completed. (Sparkman Decl. Ex. Y ("Australia Counsel
14  Invoice"), ECF No. 49-2.) Paige provides no other information supporting that these
15  fees are reasonable, such as the identity, experience, rates, or hours of the attorneys who
16  performed the work. (*See generally* Sparkman Decl.) As Paige fails to support the
17  reasonableness of Australia counsel's fees, the Court excludes them. *See Hensley*,
18  461 U.S. at 433 (noting that fee applicants should "submit evidence supporting the
19  hours worked and rates claimed" and, if inadequate, "the district court may reduce the
20  award accordingly").

---

[2] These factors include

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

[3] The Court understands Paige's request for "$856,899.85" to be a typographical error. (Mot. 30.)

12

Turning to JMBM's fees, Paige requests $80,057.50, based on hourly rates between $425, for an associate, to $925 for a partner. (Sparkman Decl. ¶ 22.) Paige supports these rates with relevant case authority and declaration testimony. (Mot. 30–32; Sparkman Decl. ¶¶ 19–31, Exs. S–U, ECF Nos. 49-20 to 49-22.) After careful review, the Court finds this support sufficiently establishes that the rates requested are reasonable.

In contrast, Paige supports only a portion of the requested hours. To show that the hours were reasonably expended, Paige submits declaration testimony and contemporaneous billing records for 2022, (Sparkman Decl. ¶ 32, Ex. V ("2022 Records"), ECF No. 49-23), 2023 (*id.* ¶ 33, Ex. W ("2023 Records"), ECF No. 49-24), and 2024 (*id.* ¶ 34, Ex. X ("2024 Records"), ECF No. 49-25). Paige asserts that its counsel performed 119 hours of work for a total of $80,057.50 in fees. (*Id.* ¶ 35.) After thoroughly reviewing the billing records Paige submits, the Court finds the substance of the work performed was reasonably expended, but the billing entries provided total the reduced sum of $62,685.00 and not the $80,057.50 requested. (*See* 2022 Records; 2023 Records; 2024 Records.) As Paige adequately supports the reduced sum, the Court awards JMBM **$62,685.00** in attorneys' fees.[4]

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Paige's Motion for Entry of Default Judgment against Sage and Paige for (1) federal trademark infringement, (15 U.S.C. § 1114); (2) federal false designation of origin, (15 U.S.C. § 1125(A)); (3) federal trademark dilution (15 U.S.C. § 1125(C)); (4) state trademark dilution and injury to reputation (Cal. Bus. & Prof. Code § 14330); (5) unfair business practices (Cal. Bus. & Prof. Code § 17200); and (6) common law trademark infringement. (ECF No. 49.) The Court further finds it appropriate to award injunction relief and attorneys' fees and costs.

---

[4] This sum comprises these yearly totals: 2022-$40,519.50; 2023-$11,225.50; 2024-$10,940.00.

Accordingly, the Court **PERMANENTLY ENJOINS** Sage and Paige, including its agents, licensees, employees, officers, directors, representatives, attorneys, predecessors, successors, assigns, and all those acting in concert or privity with them who receive actual notice of this Judgment by personal service or otherwise, from:

(a) infringing the PAIGE Mark, including as shown in U.S. Reg. Nos. 3308211, 4046193, 4128766, 4237703, 5523189, 5682917, 5798838, and 6053489, including by using the Infringing Mark SAGE + PAIGE, including in its word mark, stylized, or logo forms, or any other marks confusingly similar to the PAIGE Mark, as or as a part of any trademark or service mark, as a business name, trade name, assumed name, domain name, email address, or social media handle, or otherwise using the infringing SAGE + PAIGE Mark, or any other mark confusingly similar to the PAIGE Mark, in connection with the advertising, promotion, marketing, sale, offer for sale, shipment, distribution, import, or export of denim and other apparel, footwear, accessories, and handbags, as well as online and brick and mortar retail store services featuring the same;

(b) using the domain names sageandpaige.com, sageandpaige.us, or sageandpaige.com.au, or the Infringing SAGE + PAIGE Mark, as part of a domain name or otherwise, in connection with the operation of a website advertising, promoting, selling, offering for sale, importing, exporting, shipping, or distributing denim and other apparel, footwear, accessories, or handbags or any similar goods or services, in or to the United States; and

(c) forming any business entities or organizations to avoid or evade the restrictions set forth in this judgment and injunction or to otherwise assist, in any way, any third party to engage in any conduct that would violate the restrictions in this judgment and injunction.

///

///

///

///

Finally, the Court **AWARDS** Paige **$62,685.00** in attorneys' fees and **$4,019.70** in costs.

The Court will enter judgment consistent with this Order.

**IT IS SO ORDERED.**

May 30, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**